IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES A. DILMORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 11-72 |
| ) | Judge Nora Barry Fischer |
| ALION SCIENCE AND ) | |
| TECHNOLOGY CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

I.  INTRODUCTION

Presently before the Court is a Motion to Transfer Venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a), wherein Defendant seeks transfer of Plaintiff's employment discrimination claims from this Court to the United States District Court for the Eastern District of Virginia. (Docket No. 4). The instant action arises out of alleged age discrimination, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 *et seq.* (Docket No. 1). For the reasons outlined herein, Defendant's Motion is DENIED.

   A.  *Factual Background*

Plaintiff is a resident of southwestern Pennsylvania. (Docket No. 11 at 2). Defendant is an employee-owned technology solutions company, whose corporate headquarters is located in McLean, Virginia. (Docket No. 4-1 at ¶¶ 3, 6). As part of its business, Defendant maintains several facilities and offices in Virginia and in the metropolitan area of Washington, D.C. (*Id.* at

¶¶ 5-7). Defendant also maintains a small office sited near Pittsburgh, Pennsylvania. (*Id.* at ¶ 11).

Plaintiff's action arises from his termination of employment in July 2010. (*See* Docket Nos. 1 at ¶ 36-55, 17-3, 17-4). In October 2004, Plaintiff was hired by Defendant to be the Director of Proposal Planning and Development. (Docket No. 1 at ¶ 7). During his employment, Plaintiff was permitted to work remotely out of his home. (Docket Nos. 4-1 at ¶ 8, 11 at 2). Under the parties' arrangement, Plaintiff worked out of his home for approximately three weeks per month.[1] (Docket No. 4-1 at ¶ 8). In the remaining week, Plaintiff worked at one of Defendant's offices in McLean or Fairfax, Virginia. (*See Id.* at ¶ 9; Docket No. 11 at 9). For a number of years, Plaintiff reported directly to Defendant's current Chief Operating Officer Stacey Mendler and the parties appear to have had a good working relationship. (Docket No. 1 at ¶¶ 10-26; *see also* Docket No. 17-7). At some point, Plaintiff was promoted to Vice President of Corporate Development. (Docket No. 1 at ¶ 13).

In late 2009, Defendant hired David Crenshaw as its Senior Vice President of Strategic Operations. (*Id.* at ¶ 27). Thereafter, Mr. Crenshaw became Plaintiff's supervisor in early 2010. (*Id.* at ¶ 28). Three months later, at a time when Plaintiff was turning 65 years old and without warning, Defendant posted an advertisement for Plaintiff's position on its website. (*Id.* at ¶¶ 29, 30). Plaintiff learned of the ad through another employee in February 2010 and approached Ms. Mendler regarding the posting.[2] (*Id.* at ¶¶ 31, 32). She was unaware that Plaintiff's position had been posted and the ad was later removed. (*Id.* at ¶¶ 32, 35).

---

[1] During Plaintiff's tenure of employment, Defendant withheld Pennsylvania state payroll taxes from Plaintiff's pay, including Pennsylvania income and unemployment insurance taxes. (*See* Docket No. 17-6).

[2] It is unclear from Plaintiff's Complaint how he was advised of the ad and where he approached Ms. Mendler. (*See* Docket No. 1 at ¶¶ 31, 32).

Subsequently, on June 30, 2010, Plaintiff was summoned to a meeting in Virginia with Mr. Crenshaw to discuss work projects.³ (*Id.* at ¶ 36; Docket No. 17 at 1). At the meeting, the two men were joined by Kathy Madaleno, Defendant's Human Resources Director. (Docket No. 1 at ¶ 37). Upon her arrival, Plaintiff was informed that Defendant was "making changes" and would be soliciting applications for Plaintiff's position on its website. (*Id.* at ¶ 38). Plaintiff was then told by Mr. Crenshaw that he could retire, which was reiterated by Ms. Madaleno. (*Id.* at ¶¶ 39, 42). Ms. Madaleno further stated that Defendant would have no employment position for Plaintiff. (*Id.* at ¶ 41). Instead, Mr. Crenshaw expressed an interest in one of Defendant's employees who had worked under Plaintiff and was more than 20 years his junior. (*Id.* at ¶ 40). No reason was given why Plaintiff's employment had been terminated. (*Id.* at ¶ 44).

At the June 30, 2010 meeting, Plaintiff was given a "General Release" and an unsolicited offer of severance pay. (*Id.* at ¶ 45). Ms. Madaleno instructed Plaintiff that the release needed to be executed and returned within one week. (*Id.* at ¶ 46). The severance agreement characterized Plaintiff's termination as a resignation. (*Id.* at ¶ 47). The next day, Mr. Crenshaw sent an email to certain of Defendant's employees which praised Plaintiff's prior work performance, but characterized his departure as voluntary and of his own choosing. (*Id.* at ¶ 48). After receiving the email, one employee accused Plaintiff of quitting and failing as a leader. (*Id.* at ¶ 49).

Following Plaintiff's departure, Mr. Crenshaw assumed Plaintiff's job duties and, shortly thereafter, hired a substantially younger and allegedly less qualified employee to take over Plaintiff's former position. (*Id.* at ¶ 50). On July 6, 2010, in a writing from Ms. Madaleno,

---

³ Although not explicitly stated, it appears that the location of the June 30, 2010 meeting was Defendant's Corporate Proposal Center, located in Fairfax, Virginia. (*See* Docket No. 4-1 at ¶¶ 7, 16).

Plaintiff was reminded that he had until July 8, 2010 to return the signed release agreement.[4] (*Id.* at ¶ 51). However, Plaintiff advised Ms. Madaleno, via email sent on July 20, 2010, that he would not sign the document. (*Id.* at ¶ 53). In addition, on July 21, 2010, Plaintiff, also by email, requested an explanation for his termination. (Docket No. 1 at ¶ 55, 56). According to Plaintiff, both of these emails were sent from a location near Pittsburgh, Pennsylvania. (*See* Docket Nos. 1 at ¶ 55, 17 at 1, 17-2). In response, Defendant provided no explanation beyond "business considerations." (Docket Nos. 1 at ¶ 56).

On July 22, 2010, Ms. Madaleno sent an email to Plaintiff, wherein she stated:

Since you will not sign the General Release your employment with [Defendant] will end effective tomorrow. Please send back all of your … equipment an (sic) you will receive a FedEx termination package tomorrow at your home.

(Docket No. 17-3). Plaintiff still did not sign and return the release. Instead, he received the "termination package" addressed to his residence in Irwin, Pennsylvania, which included a termination letter signed by Ms. Madaleno. (Docket No. 17-4). Notably, the termination letter, which was also dated July 22, 2010, advised Plaintiff that he would soon be eligible to file for unemployment with the Pennsylvania Department of Labor and Industry. (*Id.*). Plaintiff received Defendant's termination package at his home on July 23, 2010. (*See* Docket No. 17 at 2). According to Defendant, the decision to terminate Plaintiff's employment was made in its Fairfax, Virginia office.[5] (Docket No. 4-1 at ¶ 16).

---

[4] It is unclear from the record what type of writing was sent by Ms. Madaleno on July 6, 2010. (*See* Docket No. 1 at ¶ 51). It is equally unclear from which location the writing was sent or the location in which it was received. (*See Id.*).

[5] Without filing a motion to strike, Plaintiff has questioned – both in his response brief and during oral argument – whether this Court should consider certain of the statements made within the declaration of Kathy Madeleno, which Defendant filed in support of the instant motion. (*See* Docket Nos. 11 at 3-4, 16 at 25-26). Specifically, Plaintiff urges the Court to disregard Ms. Madaleno's assertion that "[t]he decision to terminate [Plaintiff's] employment with [Defendant] was made in [Defendant's] Fairfax, Virginia office" as conclusory, given her failure to explicitly identify the decision maker(s), along with her acknowledgement that the statements made in her Declaration were "true and correct to the best of [her] knowledge, *information, and belief*." (Docket No. 4-1 at

On August 6, 2010, Plaintiff, through his legal counsel, sent Defendant and a selection of its senior executives a detailed document and preservation letter, which advised the recipients that litigation under age discrimination laws was reasonably foreseeable. (Docket No. 1 at ¶ 57). In the preservation letter, Plaintiff's counsel identifies 27 individuals whom he believes are custodians of electronically-stored information, which may be relevant to the instant case. (Docket No. 4-2 at 9-10). The majority of these persons both live and work in Virginia, with only a handful, including Plaintiff, residing outside the state. (*Id*. at ¶ 18; Docket No. 5 at 4).

Plaintiff's Complaint alleges that age was a substantial factor in Defendant's decision to terminate his employment and that such a discriminatory use of his age was willful. (Docket No. 1 at ¶¶ 62-64, 65-68).

B. *Procedural Background*

Plaintiff commenced the current action by filing his Complaint on January 19, 2011. (*Id.*). Defendant then filed the instant motion, with brief in support, on February 21, 2011. (Docket Nos. 4, 5). Plaintiff filed his response thereto on March 7, 2011, (Docket No. 11), and the Court heard oral argument on March 11, 2011, (*see* Docket No. 14). Subsequently, the transcript was prepared, (Docket No. 16), and both parties submitted supplemental briefs in support of their respective positions, (Docket Nos. 17, 18). As the motion is now fully briefed, it is ripe for disposition.

---

1, ¶ 16) (emphasis added). This objection is without merit. Although the Court agrees that affidavits submitted in connection with a motion must be based on personal knowledge, and not on information or belief, *see Grant v. Erie Ins. Exch.*, 542 F. Supp. 457, 465 n.8 (M.D. Pa. 1982), the Court finds that this standard is easily satisfied when the factual basis for the statement in question is examined within the context of the full Declaration, (*e.g.*, Docket No. 4-2 at ¶ 2). Notably, in this regard, Plaintiff's argument is undermined by many of his own allegations, including his contentions that Ms. Madaleno was present during the June 30, 2010 meeting and that she signed his termination letter. (*See* Docket Nos. 1 at ¶¶ 37-56, 17-4). Thus, the Court will consider paragraph 16 of Ms. Madaleno's Declaration. *See Fellner v. Phila. Toboggan Coasters, Inc.*, Civ. No. 05-2052, 2005 U.S. Dist. LEXIS 23839, at *4 (E.D. Pa. Oct. 18, 2005) ("In considering a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the court must generally accept as true the allegations in the complaint, *although the parties may submit affidavits in support of their positions*.") (emphasis added).

II.      LEGAL STANDARD

    A.    *Motion to Transfer Venue*

In deciding a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), a court must accept as true the allegations in the complaint, unless contradicted by the defendant's affidavits. *Whipstock Natural Gas Servs. v. Trans Energy, Inc.*, Civ. No. 08-1084, 2008 U.S. Dist. LEXIS 71489, at *4 (W.D. Pa. Sept. 17, 2008) (citation omitted). "The court may examine facts outside the complaint to determine proper venue, but must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor." *Fellner*, 2005 U.S. Dist. LEXIS 23839, at *4; *accord Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005) ("Whatever the nature of the parties' submissions, the court is bound to view the facts in the light most favorable to the plaintiff.").

    B.    *Transfer of Venue pursuant 28 U.S.C. § 1404(a)*

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil case to another district "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Such transfers "are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum." *Lafferty v. Gito St. Riel*, 495 F.3d 72, 76, 79 n.8 (3d Cir. 2007).

The purpose of § 1404(a) is to prevent waste of time and resources and to protect the parties and witnesses and the general public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The party seeking transfer bears the burden of establishing that transfer is appropriate and must demonstrate that the alternative forum is adequate and more convenient. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The moving party must show that "on balance the litigation would more conveniently proceed

and the interests of justice be better served by transfer to a different forum." *Id.* (internal quotations omitted).

Section 1404 requires a two-pronged analysis. *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. July 7, 2010). The threshold inquiry is whether the proposed forum is one in which Plaintiff could have originally brought suit. *Id.* The instant action arises under a federal statute, namely the ADEA. (*See* Docket No. 1 at ¶ 4). Accordingly, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). There is only one Defendant in this case and its corporate headquarters are located in the Eastern District of Virginia. (*See* Docket No. 4-1 at ¶ 6). Thus, venue would be proper in the Eastern District of Virginia.

Next, this Court must consider whether transfer would be in the interest of justice and for the convenience of the parties and witnesses. *See* 28 U.S.C. § 1404(a). In *Jumara*, the Court of Appeals outlined the private and public factors for the Court to consider in exercising its discretion. *Id.* The relevant private factors to consider include: (1) each party's forum preference; (2) where the claim arose; (3) the convenience of the parties as indicated by their relative physical and financial conditions; (4) the convenience of the witnesses; and (5) the locations of books and records. *Jumara,* 55 F.3d at 879; *see also In re Amendt*, 169 F. App'x. 93, 96 (3d Cir. 2006). The Court must also consider a number of public factors, including (1) enforceability of judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting

7

from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879; *see also In re Amendt*, 169 F. App'x. at 96.

III. DISCUSSION

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' . . . A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citations omitted). "The above list of factors is merely a guide, and not all the factors may be relevant or determinative in each case." *LG Electronics, Inc. v. First Intern. Computer, Inc.*, 138 F. Supp. 2d 574, 587 (D.N.J. 2001). "Depending on the nature and facts of the case, these factors often overlap and are intertwined" so courts are rightly careful to avoid "double-counting" the same information under multiple factors. *Gonzales v. Supervalue Transp, Inc.*, Civ. No. 07-5437, 2008 U.S. Dist. LEXIS 27382, at *4 (E.D. Pa. Apr. 3, 2008); *see also Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192 (D. Del. 1998); *see also Terra Intern., Inc. v. Mississippi Chem. Corp.*, 922 F. Supp. 1334, 1358 n.18 (N.D. Iowa 1996).

A. Relevant Private Factors

1. **The Parties' Choice of Forum**

"[I]n ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara,* 55 F.3d at 879. This is especially true when a plaintiff's choice is his home forum. *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, Civ. No. 09-290, 2009 U.S. Dist. LEXIS 85976, at *6 (W.D. Pa. Sept. 21, 2009); *cf. Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, 524 F. Supp. 2d 628, 631 (W.D. Pa. 2006). At the same time, the Court must also consider

the defendant's preference. *Jumara*, 55 F.3d at 879. Here, although Defendant has expressed a preference for the Eastern District of Virginia, (Docket Nos. 3, 4), on balance, this factor weighs in favor of Plaintiff, as he not only brought suit in this district, but he also resides here. (Docket No. 1). Accordingly, this factor favors Plaintiff.

### 2. Where the Claim Arose

The Court also considers "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879. This is a separate consideration from the convenience of the parties and focuses on where the relevant discriminating activities or other activities relevant to the claims at issue took place. In addressing this factor, Defendant contends that the litigation should be transferred to Virginia because all of the operative facts—most notably the decisions regarding Plaintiff's termination— were made in that state. (Docket No. 4-1 at ¶¶ 15, 16). Plaintiff responds that his lawsuit is grounded in Pennsylvania because he generally worked from his home office. (Docket No. 11 at 2). He reasons that this District is the appropriate forum because that is where he was based, was where the effect of his termination was felt, and is where he has searched for alternative employment. (*Id.*).

In support of its position, Defendant cites to a number of decisions from the Eastern District of Pennsylvania. *E.g.*, *Washington v. Tank Indus. Consultants, Inc.*, Civ. No. 08-2407, 2008 U.S. Dist. LEXIS 111067, at *6-10 (E.D. Pa. Nov. 14, 2008).[6] Most analogous amongst these is *Wayne v. Fuji Photo Film USA, Inc.*, Civ. No. 07-5536, 2008 U.S. Dist. LEXIS 62255 (E.D. Pa. Aug. 14, 2008), wherein the court decided a similar motion based upon a comparable

---

[6] The Court notes that, in *Washington*, the plaintiff initially filed a discrimination charge with the Pennsylvania Human Relations Commission, but it was transferred to the Indianapolis District of the United States Equal Employment Opportunity Commission ("EEOC"), i.e., the district where the defendant's headquarters were located, for investigation and ruling. 2008 U.S. Dist. LEXIS 111067, at *10 n.6. An EEOC investigator later dismissed the plaintiff's administrative charge and issued a right-to-sue letter out of its Indianapolis office. *Id.* By contrast, in this case, counsel have represented to the Court that Plaintiff's administrative charge was filed in the Pittsburgh area office, where it was defended on the merits. (Docket No. 16 at 21).

9

factual scenario. In *Wayne*, the plaintiff, who worked out of his home office and traveled throughout the United States,[7] argued that his case should proceed in the Pennsylvania district court because that was where he was based, paid taxes, voted, and resided for over fifteen years. *Id.* at *2, 5. The court rejected this argument. *Id.* at *5-6. In doing so, it found that the plaintiff's discrimination claims arose in the District of New Jersey because he was based out of an office located there. *Id.*. Notably, the *Wayne* court highlighted that the plaintiff reported to management at that office, attended meetings at that office, had a telephone extension listed from that office, and the alleged violation of the ADEA occurred at that office.[8] *Id*. at *6.

---

[7] As compared to the plaintiff in *Wayne*, who was employed as a "Technical Representative" and whose job duties required him to travel around the country, 2008 U.S. Dist. LEXIS 62255, at *1, at the time he was fired, Plaintiff was Defendant's "Vice President of Corporate Development" and spent the majority of his time working out of his home office in Pennsylvania, (*see* Docket Nos. 4-1 at ¶¶ 8, 9, 11 at 2).

[8] The Court recognizes that many of the same facts are present in this case. Specifically, as stated in the declaration of Ms. Madaleno:

9. [Plaintiff] worked for at least one week per month at [Defendant's] Proposal Center in Fairfax, Virginia.

10. [Plaintiff's] job duties with [Defendant] related entirely to work performed in [Defendant's] Northern Virginia offices and Proposal Center in Fairfax.

12. [Plaintiff] worked on projects and proposals at the Proposal Center, managed a staff of subordinates at the Proposal Center, and traveled to the Proposal Center from his home in Irwin, Pennsylvania for at least one week each month to work on proposals and other projects.

13. The persons who supervised [Plaintiff] during his employment with [Defendant] live and work in or near the Northern Virginia area.

14. All of the employees whom [Plaintiff] supervised during his employment with [Defendant] also live and work in or near the Northern Virginia area.

15. All of the decisions that [Defendant] made regarding the termination of [Plaintiff's] employment were made by [Defendant] employees who live and work in or near the Northern Virginia area.

16. The decision to terminate [Plaintiff's] employment with [Defendant] was made in [Defendant's] Fairfax, Virginia office.

(Docket No. 4-1 at ¶¶ 9, 10, 12-16).

In turn, Plaintiff relies on an older decision from the Southern District of Texas in support of his position. In *Bevil v. Smit Americas, Inc.*, the plaintiff brought suit under the ADEA after she was discharged from her employment in the defendant's Galveston office, alleging that her employment in said office was terminated because its new director wished to hire younger women. 883 F. Supp. 168, 169 (S.D. Tex. 1995). The defendant then sought transfer of the case from the Galveston Division of the district court to the Houston Division, arguing, *inter alia*, that "the executive decision by the Defendant to lay off the Plaintiff was rendered in Houston," and not in the local office where the plaintiff worked. *Id.* at 170. Though it appreciated what it considered to be a "creative legal argument[]," the court was not persuaded and found the defendant's argument to be "based solely on hyper-technical metaphysical distinctions." *Id.* at 171-72. Markedly, within its assessment of the place of the alleged wrong, the *Bevil* court stated:

> Taken to its logical conclusion, Defendant's argument would militate in favor of absolving vast corporate empires of localized responsibility for policy and business decisions on the questionable grounds that the decision was made elsewhere. Corporations could easily circumvent state and federal law and the resultant consequences simply by choosing to make a decision in an isolated location far from where the decision has its ultimate impact. Corporations are certainly entitled to make decisions that have serious ramifications for all of their employees, officers and directors. But, inasmuch[as] decisions rendered at the executive level have an impact upon the lives of employees at all tiers of the corporate pyramid, the corporation must stand accountable therefore, at the actual place of impact.

*Id.* at 172.

While recognizing the holding of our sister court in *Wayne*, *see* 2008 U.S. Dist. LEXIS 62255, at *5-6, this Court engages in an independent analysis of where the claim arose, believing that a different result may obtain. *See Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("Even where the facts of a prior district court are, for all practical

11

purposes, the same as those presented to a different district court in the same district, the prior resolution of those claims does not bar reconsideration by this Court of similar contentions."). In this regard, the Court notes initially that, in employment discrimination cases, courts look to the location of the operative facts to ascertain the situs of the claim. *See*, *e.g.*, *Evans v. Merck & Co., Inc.*, Civ. No. 01-4820, 2002 U.S. Dist. LEXIS 1093, at *8 (E.D. Pa. Jan. 23, 2002). Here, it is evident that many of the requisite facts transpired in this District. For instance, it is undisputed that Plaintiff performed most of his work for Defendant from his home office in Western Pennsylvania and it appears, based on the pleadings, that he would have continued working in Pennsylvania if his employment had not been terminated. *See Imani v. U-Haul Int'l, Inc.*, Civ. No. 07-2231, 2007 U.S. Dist. LEXIS 64971, at *10-13 (E.D. Pa. Sept. 4, 2007) (finding, in the venue context, that plaintiff's discrimination claims arose out of events that occurred in and around the location where he worked); *see also Knight v. Corp. for Nat'l & Cmty. Serv.*, Civ. No. 03-2433, 2004 U.S. Dist. LEXIS 21790, at *19-20 (E.D. Pa. Oct. 28, 2004) (same). Moreover, as Defendant delivered its decision to terminate Plaintiff's employment through correspondence directed to Plaintiff's residence in Pennsylvania, the underlying basis of Plaintiff's age discrimination claim, i.e., his termination, occurred in this district.[9] Finally, to the extent it expresses a concern with isolating the location of employment decisions to corporate

---

[9] In this regard, the Court notes that "to establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must establish that: (1) he is over forty; (2) he is qualified for the position in question; (3) he suffered an adverse employment decision; and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Hicks v. Tech Indus.*, 512 F. Supp. 2d 338, 347 (W.D. Pa. 2007) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006)). Additionally, the Court further notes that, in employment discrimination cases, the United States Court of Appeals for the Third Circuit has recognized that "a claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994). Thus, "once the adverse employment act occurs, such as termination or failure to promote, the employee becomes obligated to make further inquiry into the circumstances surrounding the adverse action." *Genevie v. Jackson*, Civ. No. 05-1733, 2008 U.S. Dist. LEXIS 23065, at *23 (W.D. Pa. Mar. 24, 2008).

boardrooms and headquarters, the Court agrees with the rationale employed by the court in the *Bevil* decision. 883 F. Supp. at 172.

Accordingly, distinct from the decision in *Wayne*, this Court finds that Plaintiff's claims of discrimination arose in Pennsylvania and this factor favors Plaintiff.[10] Ultimately, the Court believes that this finding is consistent with the stated purpose of the ADEA, which includes "prohibit[ing] arbitrary age discrimination in employment." 29 U.S.C. § 621(b).

### 3. Convenience of the Parties

Similarly, the convenience of the parties, as indicated by their relative physical and financial condition, *Jumara*, 55 F.3d at 879, also weighs in favor of denying Defendant's motion. Each party would doubtless find it more convenient to litigate in its home district. However, Defendant is a corporation that does business in Pennsylvania and reports sales from 2010 which exceed $800 million. (*See* Docket Nos. 4-1 at ¶ 11, 11 at 7). Therefore, it has the financial wherewithal of litigating in Pennsylvania. In contrast, Plaintiff is currently unemployed. (Docket No. 11 at 8). As *Jumara* instructs this Court to consider the relative financial condition of the parties, this factor favors Plaintiff's position. *See*, *e.g.*, *Schreiber v. Eli Lilly & Co.*, Civ. No. 05-2616, 2006 U.S. Dist. LEXIS 13477, at *32-33 (E.D. Pa. Mar. 27, 2006) (finding that this

---

[10] To this end, at the hearing held on March 11, 2011, the Court invited the parties to submit both case law from this District, as well as law review articles that analyze the place of the alleged wrong in the context of an employment discrimination case. (*See* Docket No. 16 at 50). In response, the only Western District case provided by either party was *Dobrick-Peirce v. Open Options, Inc.*, Civ. No. 05-1451, 2006 U.S. Dist. LEXIS 50874 (W.D. Pa. July 25, 2006), wherein a Title VII claim for alleged sexual harassment and retaliation was transferred pursuant to 28 U.S.C. § 1404(a) to the Northern District of Texas, *Id.* at *27, and neither party presented any scholarly writing on the topic. (*See* Docket Nos. 17, 18). In this Court's estimation, the decision in *Dobrick-Peirce* is distinguishable from the case at hand. For instance, in *Dobrick-Peirce*, the court found that the plaintiff "[had] not identified any alleged wrongful conduct that occurred in this district." 2008 U.S. Dist. LEXIS 50874, at *22. By contrast, as previously stated, here, Plaintiff received his termination letter at his home in Irwin, Pennsylvania. (*See* Docket No. 17 at 2). Additionally, as represented to the Court, both parties recognize that a central issue in the litigation of this case will be Plaintiff's job performance, the majority of which occurred in Pennsylvania. (*See* Docket No. 16 at 17, 28, 35). Moreover, unlike the present situation, in *Dobrick-Peirce*, to proceed with the Title VII claim in this District, the court would have had to sever the two tort claims brought against the individual defendants—for which venue was improper—thereby defeating the policy of judicial efficiency and leading to administrative difficulties and unneeded court congestion. 2008 U.S. Dist. LEXIS 50874, at *26.

factor favored the plaintiffs who were an individual physician, a small local business, and a Pennsylvania not-for-profit educational institution over the defendant, a multi-billion dollar corporation with interests and activities spanning the globe).

### 4. Convenience of the Witnesses

The convenience of the witnesses is a separate consideration from that of the parties. Since "party witnesses are presumed to be willing to testify in either forum despite any inconvenience . . . [t]he convenience of the non-party witnesses is the main focus" of this factor. *Hillard v. Guidant Corp.*, 76 F. Supp. 2d 566 (M.D. Pa. 1999). The Court, therefore, confines its analysis to the convenience of the non-party witnesses and considers this factor "only to the extent that the witnesses may actually be *unavailable* for trial in one of the fora." *Jumara*, 55 F.3d at 879 (emphasis added). Here, Defendant asserts that most of the potential witnesses in this case are current employees who live and work in Virginia. (Docket No. 5 at 12). Defendant further asserts that there are additional former employees in that area who may also be called to testify. (*Id.*). In response, Plaintiff counters by identifying three witnesses who live in Pennsylvania; namely, himself, his wife, and his economic loss expert. (Docket No. 11 at 5). The Court finds none of these arguments persuasive and, in fact, most miss the mark.

In making this determination, the Court notes initially that the convenience of the witnesses employed by Defendant is not to be weighed in Defendant's favor. *See Pittsburgh Logistics Sys., Inc. v. C.R. Eng., Inc.*, Civ. No. 09-1036, 2010 U.S. Dist. LEXIS 2941, at *15 (W.D. Pa. Jan. 14, 2010) (finding that the accessibility of employee witnesses carries no weight because parties are obligated to procure their attendance at trial). Similarly, "expert witnesses or witnesses who are retained by a party to testify carry little weight because they 'are usually selected because of their reputation and special knowledge without regard to their residences and

14

are presumably well compensated for their attendance, labor and inconvenience, if any.'" *Inaganti v. Columbia Props. Harrisburg LLC*, Civ. No. 10-1651, 2010 U.S. Dist. LEXIS 59166, at *11-12 (E.D. Pa. June 15, 2010) (quoting *Webster-Chicago Corp. v. Minneapolis-Honeywell Regulator Co.*, 99 F. Supp. 503, 505 (D. Del. 1951)). Moreover, as in *IMS Health, Inc. v. Vality Tech. Inc.*, "neither party alleges that even one of its witnesses would be unavailable for trial in either forum, and therefore this factor is similarly devoid of significant importance." 59 F. Supp. 2d 454, 470 (E.D. Pa. 1999). Even if practical considerations arise which prevent witnesses from appearing live, at any proceeding, alternative arrangements can be made.[11]

Ultimately, since Defendants bear the burden of showing that inconvenience would make non-party witnesses unavailable for trial and because the Court finds that they have not done so, this factor weighs in favor of Plaintiff.

### 5. Location of the Books and Records

*Jumara* directs the Court to consider "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. Defendant has claimed that the vast majority of documents and records related to Plaintiff's claims are located in Defendant's offices in Virginia. (Docket No. 5 at 13). These include Plaintiff's "employment records, personnel file, performance evaluations, and communications and documents specifically related to the decision to terminate Plaintiff's employment." (Docket No. 4-1 at ¶ 17). While it is likely that more records will originate in the Eastern District of Virginia than in this District, that does not mean that the "files could not be produced" here. *See Jumara*, 55 F.3d at 879. Furthermore, the Court notes that this factor need not be weighed

---

[11]Modern technology makes actual unavailability for trial less likely since video recordings of appearances can be made for trial and witnesses can appear remotely via video-conferencing technology. *See Berg v. Aetna Freight Lines*, Civ. No. 07-1393, 2008 U.S. Dist. LEXIS 54905, at *9 (W.D. Pa. July 15, 2008).

heavily because much of the discovery in this matter, as in many modern cases, can be exchanged electronically, (*see* Docket Nos. 4-2, 11 at 4), minimizing or eliminating any difference in access to documents caused by geography. Since Defendant has not carried its burden of showing that files discoverable in this matter could not be produced in this District, this factor weighs in favor of Plaintiff.

    *B.    Relevant Public Factors*

        **1.    Practical Considerations**

This factor considers the ease, expediency, and expense of adjudicating the claims in the different venues. *Jumara*, 55 F.3d at 879. However, courts have differed as to how to analyze this factor or whose ease, expediency, and expense it addresses. *E.g.*, *LG Electronics*, 138 F. Supp. 2d at 592 (considering the presence of related cases in one district); *IMS Health,* 59 F. Supp. 2d at 470 (considering court congestion); *Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 359 (D. Del. 1999) (declining to consider a party's expense because it was already part of the private factors); *Affymetrix*, 28 F. Supp. 2d at 205-206 (declining to consider this factor at all because it overlaps with considerations of docket congestion and party convenience, but noting that the need to hire local counsel is an added expense for a non-home forum); *Optopics Laboratories Corp. v. Nicholas*, 947 F. Supp. 817, 826 (D.N.J. 1996) (considering the two districts' different authority to compel arbitration). Thus, depending on how it is interpreted, this factor can overlap with a number of others and the Court must be careful not to "double count" it. *See Affymetrix*, 28 F. Supp 2d at 205-06. To avoid "double counting" the same facts, the Court will not re-consider the convenience of the parties and the witnesses or the relative docket congestion in the two districts. Neither party has set forth any other facts, such as a related case in one District, that address this factor; yet, the Court notes that the Local Civil Rules for this

District *require* that this case be referred to an alternative form of dispute resolution, which does not appear to be true in the Eastern District of Virginia. *Compare* W.D. Pa. L. Cv. R. 16.2, *with* E.D. Va. L. Cv. R. 83.6. Accordingly, this factor favors the Plaintiff, if ever so slightly.

### 2. Administrative Difficulty and Court Congestion

Neither party argues that one Court has any advantage over another with regard to administrative difficulty and court congestion. Accordingly, this factor is neutral. In this regard, the Court notes that its docket is not so congested that these parties could not have a trial by year's end dependent upon how quickly they move through discovery and pretrial motions.

### 3. Local Interest

Courts have an interest in resolving matters of local interest. *Gulf Oil Corp. v. Gilbert* 330 U.S. 501, 509 (1947) ("In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home."). This factor also overlaps with factors already discussed (where the claim arose and the convenience of the parties), *see LG Elecs. Inc. v. First Int'l Computer of Am., Inc.*, 138 F. Supp. 2d 574, 592 (D.N.J. 2001), so the Court limits its focus to the interests of local judges and juries in events in their community.

Both Plaintiff and Defendant have arguments for local interest since each is based in the District where they seek to have the case adjudicated. Plaintiff argues that this District has a further interest in affording him the protections conveyed upon him by both the federal and, more significantly, Pennsylvania laws against age discrimination. (Docket No. 11 at 3). In turn, Defendant argues that the Eastern District of Virginia has a greater local interest in adjudicating

17

disputes concerning allegations of discrimination that allegedly occurred in that District by an employer and its officers who reside there. (Docket No. 5 at 13-14).

The Court sees merit in both parties' positions. On the one hand, beyond Defendant and its decision-makers, this Court also believes that an appropriate consideration is the interest of Defendant's lower level employees. These are the other workers who may be subject to discrimination by Defendant that have an interest in having this controversy decided in Virginia, where the majority of such workers are employed.[12] *See Wayne*, 2008 U.S. Dist. LEXIS 62255, at *10-11. Conversely, though not a diversity case, *see Jumara*, 55 F.3d at 879-80, the fact that Pennsylvania law will apply to Plaintiff's PHRA claim weighs in favor of Plaintiff, given the public interest in having this case handled by a judge familiar with Pennsylvania law, *see Imani* 2007 U.S. Dist. LEXIS 64971, at *17 n.5. In addition, beyond Defendant's withholding and remitting of Pennsylvania income and unemployment taxes on Plaintiff's behalf, (*see* Docket Nos. 17 at 2, 17-6), Defendant also instructed Plaintiff to file for unemployment with the

---

[12] As identified in the declaration of Ms. Madaleno:

5. [Defendant] maintains seven large facilities in the Northern Virginia area, including the offices where [Defendant] maintains its headquarters and does a majority of its business. [Defendant] also maintains several additional offices in the Washington, D.C. metropolitan area.

6. [Defendant's] corporate headquarters are located at 1750 Tysons Blvd., Suite 1300, McLean, Virginia 22102.

7. [Defendant] also maintains a facility at 3975 Fair Ridge Drive, Suite 125 South Building, Fairfax, Virginia 22033, where several corporate offices and [Defendant's] Corporate Proposal Center are located.

11. [Defendant] maintains a small office just outside of Pittsburgh, Pennsylvania….

(Docket No. 4-1 at ¶¶ 5-7, 11). On this point, the Court is cognizant that employees do not necessarily reside in the same state as their place of employment. Nevertheless, of those presently identified in the record, the majority of Defendant's employees appear to both live and work in Virginia. (Docket Nos. 4-1 at ¶ 18, 5 at 3-4). Notably, however, the record does not reflect how many persons Defendant employs at its Pittsburgh office or in Pennsylvania, generally.

Pennsylvania Department of Labor and Industry, (*see* Docket No. 17-4). Therefore, on balance, this factor, too, marginally favors Plaintiff.

IV. CONCLUSION

Upon consideration of the arguments of the parties in their briefs and oral arguments, as well as the factors outlined in *Jumara*, Defendant's Motion to Transfer Venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a) is DENIED. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: April 21, 2011

cc/ecf: All counsel of record.